**The LA Reid Music Publishing Company, LLC**
**EMI April Music Inc.**
550 Madison Avenue
New York, New York 10022

Effective as of January 1, 2014

Hyuk Shin, individually and d/b/a The Publishing Designee of Hyuk Shin
c/o Anthony Jones, Esq.
The Jones Firm, LLP
113 Broadway, Suite 708
New York, NY 10010

Sean Hamilton, individually and d/b/a The Publishing Designee of Sean Hamilton
201 Howard Street, SE, Suite 1
Atlanta, GA 30317

Majic Entertainment, LLC
c/o Ian Waldon, Esq.
The Waldon Law Group, LLP
112 West 34th Street, 18th Floor
New York, NY 10120

Gentlemen:

Reference is made to the agreement between Majic Entertainment LLC (hereinafter "Majic") furnishing the services of Sean Hamilton ("Hamilton") and Hyuk Shin ("Shin"), on the one hand, and The LA Reid Music Publishing Company, LLC (hereinafter "Reid") and EMI April Music Inc. (hereinafter "EMI;" collectively with Reid, "Publisher"), on the other hand, dated as of May 1, 2009 (such agreement, as amended, modified or supplemented prior to the effective date hereof, the "Agreement"). This letter, when signed by each party hereto, shall constitute a modification to the Agreement (this "Modification").

Unless specifically provided to the contrary below, all capitalized terms used but not otherwise defined in this Modification shall have the meanings ascribed to them in the Agreement.

1. Majic, Hamilton, Shin and Publisher each acknowledge as follows:

(a) The Agreement provides for a Term consisting of an Initial Contract Period, with Publisher having Options to extend the Term for up to two (2) additional Contract Periods (the "First Option Period" and "Second Option Period").

(b) The Initial Contract Period of the Term is currently in effect and will remain in effect until 30 days after Publisher has received written notice from Majic accurately reflecting fulfillment of the MDRC for the Initial Contract Period.

(c) Pursuant to the Agreement, Majic is obligated to Deliver to Publisher, for Publisher's exclusive exploitation under the Agreement, all musical compositions written and/or acquired at any time prior to or during the Term by Hamilton and/or Shin (as more fully defined in the Agreement, "Compositions"), and is required to fulfill all other obligations to Publisher pursuant to the Agreement. Under the Agreement, Majic has the sole obligation to make any

required payments to Hamilton and/or Shin in accordance with the pre-existing agreement between Hamilton and Shin, on the one hand, and Majic, on the other, pursuant to which Majic acquired all rights relating to Hamilton and Shin and the Compositions (the "Writer Agreement"). Although Hamilton and Shin are not direct parties to the Agreement, pursuant to the "Writer's Inducement" attached to the Agreement, Hamilton and Shin guarantee to Publisher the performance of Majic's obligations thereunder.

(d) Prior to the execution of this Modification, Hamilton and Shin have made various claims that Majic has failed to make required royalty payments to them under the Writer Agreement.

(e) In this Modification, Majic, Hamilton, Shin and Publisher wish to modify certain provisions of the Agreement, including without limitation certain royalty payment and Delivery obligations, on the terms and conditions set forth below.

2. Obligations to Publisher. Notwithstanding that all of the obligations to Publisher under the Agreement are solely Majic's obligations, for the remainder of the Term, Shin and Hamilton hereby agree to perform, directly for Publisher, any and all obligations which relate to the Compositions, Delivery thereof, and fulfillment of the Minimum Delivery and Release Commitment. Further, Shin and Hamilton shall be jointly and severally liable with respect to all representations, warranties, covenants and other obligations of Majic under the Agreement and shall be deemed added as additional parties to the Agreement and bound by all relevant terms thereof. The foregoing shall not discharge Majic of any of such obligations. Rather, effective as of the date hereof and for the remainder of the Term and Retention Period, Majic, Shin and Hamilton shall be jointly and severally liable for the performance of all obligations to Publisher under the Agreement, including without limitation, all obligations relating to the Compositions, Delivery thereof, and fulfillment of the MDRC.

3. Royalty Accountings. Notwithstanding anything to the contrary contained in the Agreement, Publisher's obligations to Majic to account and pay royalties pursuant to paragraph 8 of the Agreement shall, as of the date hereof, apply directly to each of Majic, Shin and Hamilton. For the avoidance of doubt, EMI shall hereafter individually account to Shin and Hamilton directly and in accordance with the terms of the Agreement, as modified hereby. Accordingly, EMI shall establish separate royalty accounts for each of Majic, Shin and Hamilton to which Advances and royalties will be credited pursuant to paragraphs 5 and 6 below and otherwise on the same terms and conditions as described in the Agreement. None of these accounts will be cross-collateralized with each other.

4. Releases. (a) Majic, Shin and Hamilton, on behalf of themselves and their successors, heirs, executors, administrators, agents, representatives, partners, employees, assigns and licensees hereby fully release and forever discharge Reid and EMI and each of Reid's and EMI's successors, estates, predecessors, affiliates, licensees, parent companies, subsidiaries, officers, directors, insurers, administrators, attorneys, agents, employees, licensees and assigns from any legal cause of action whatsoever now or hereafter existing under any law, other governmental regulation or judicial decision any time prior to January 1, 2014 (the "EMI Released Period"). The foregoing shall include, but shall not be limited to, all claims, demands, damages, debts, liabilities, accounts, obligations, costs, expenses, liens, actions and causes of action, of every kind and nature, whether now known or unknown, suspected or unsuspected, that Majic, Shin and Hamilton now have, own or hold, or at any time heretofore have ever had, owned or held, or could, shall or may hereafter have, own or hold for the EMI Released Period.

(b) Shin and Hamilton, on behalf of themselves and their successors, heirs, executors, administrators, agents, representatives, partners, employees, assigns and licensees hereby fully release and forever discharge Majic and each of Majic's successors, estates, predecessors, affiliates, licensees, parent companies, subsidiaries, officers, directors, insurers, administrators, attorneys, agents, employees, licensees and assigns from any legal cause of action relating to the accounting and/or payment of royalties now or hereafter existing under any law, other governmental regulation or judicial decision any time prior to January 1, 2014 (the "Majic Released Period"). The foregoing shall include all claims, demands, damages, debts, liabilities, accounts, obligations, costs, expenses, liens, actions and causes of action related to Majic's accounting and payment obligations under the Agreement, whether now known or unknown, suspected or unsuspected, that Shin and Hamilton now have, own or hold, or at any time heretofore have ever had, owned or held, or could, shall or may hereafter have, own or hold for the Majic Released Period.

(c) Although the parties to this Agreement acknowledge that New York law (and not California law) is applicable hereto, Majic, Shin and Hamilton hereby expressly waive any right or benefit available under Section 1542 of the Civil Code of the State of California, which provides:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Majic, Shin and Hamilton also hereby waive any analogous rights or benefits which may be available under any analogous laws or legal doctrines of any other jurisdiction.

5. Settlement Fee/Advances. (a) Promptly following the full execution of this Modification and in consideration of the full and final settlement of all claims described herein, EMI agrees to make a one-time payment in the amount of Sixty Six Thousand Nine Hundred Fifty Nine Dollars and Sixty Six Cents ($66,959.66) (the "Settlement Fee"), as follows: (a) Twenty Thousand Six Hundred Forty Two Dollars and Fifty Cents ($20,642.50) to Shin; (b) Nineteen Thousand Fifty Dollars and Fifty Cents ($19,050.50) to Hamilton; (c) Twenty Four Thousand Seven Hundred Sixty Six Dollars and Sixty Six Cents ($24,766.66) to Thomas Oliveria and Vance Tate; and (d) Two Thousand Five Hundred Dollars ($2500.00) to Waldon Law Group, LLP. The Settlement Fee shall be deemed an additional Advance to Majic, shall be charged to Majic's royalty account, and shall be fully recoupable from any and all monies credited, payable, or becoming due or payable to Majic under the Agreement. Payment of the Settlement Fee shall be made in accordance with the payment instructions as described on the attached Schedule A. Shin, Hamilton and their representatives (Thomas Oliveria, Vance Tate and the Waldon Law Group, LLP) accept their portions of the Settlement Fee in full and final settlement of all claims made by such parties with respect to the Compositions and/or the Writer Agreement, including without limitation claims for payments of royalties, for any and all periods from the beginning of time through December 31, 2013.

(b) Any future Advances payable under the Agreement, if any, shall be paid out to Majic, Shin and Hamilton in the following percentages and charged to their respective royalty accounts: 50% of each such Advance shall be to paid Majic, 25% of each such Advance shall be paid to Shin and 25% of each such Advance shall be paid to Hamilton.

6. Royalties. Commencing as of the effective date of this Modification, the royalties otherwise accruing to Majic's credit under the Agreement shall be divided among Majic's, Shin's and Hamilton's royalty accounts as set forth below:

(a) Majic's Royalty. Notwithstanding anything to the contrary contained in the Agreement, Publisher agrees to credit to Majic's royalty account the following royalties specifically attributable to Publisher's exploitation of the Compositions hereunder throughout the Territory:

i. Public Performance Income. Twenty-five percent (25%) of Net Income derived from the income collected by Publisher with respect to public performances of Compositions.

ii. Mechanical and Synch Income. Thirty-seven and one-half percent (37.5%) of Net Income derived from the income collected by Publisher with respect to Publisher's license of the Compositions to others (i) for use in Phonograph Records and (ii) for synchronization in audiovisual works.

(b) Shin's Royalty. Notwithstanding anything to the contrary contained in the Agreement, Publisher agrees to credit to Shin's royalty account the following royalties specifically attributable to Publisher's exploitation of the Compositions hereunder throughout the Territory:

i. Public Performance Income. Twelve and one-half percent (12.5%) of Net Income derived from the income collected by Publisher with respect to public performances of Compositions. For the avoidance of doubt, Shin shall retain one hundred percent (100%) of his so-called "writer's share" of public performance income and shall collect such income directly.

ii. Mechanical and Synch Income. Eighteen and three-quarters percent (18.75%) of Net Income derived from the income collected by Publisher with respect to Publisher's license of the Compositions to others (i) for use in Phonograph Records and (ii) for synchronization in audiovisual works.

iii. Solely with respect to Shin's royalties with respect to the Composition ONE LESS LONELY GIRL, Shin has requested and directed that 10% of the royalties otherwise actually payable to Shin from such Composition be paid directly to Thomas Oliveria and Vance Tate in accordance with the Release and Settlement Agreement dated as of August __ [sic], 2011 ("The One Less Lonely Girl Settlement"), relevant portions of which are attached to this Agreement as Exhibit A.

(c) Hamilton's Royalty. Notwithstanding anything to the contrary contained in the Agreement, Publisher agrees to credit to Hamilton's royalty account the following royalties specifically attributable to Publisher's exploitation of the Compositions hereunder throughout the Territory:

i. Public Performance Income. Twelve and one-half percent (12.5%) of Net Income derived from the income collected by Publisher with respect to public performances of Compositions. For the avoidance of doubt, Hamilton shall retain one hundred percent (100%)

of his so-called "writer's share" of public performance income and shall collect such income directly.

ii. Mechanical and Synch Income. Eighteen and three-quarters percent (18.75%) of Net Income derived from the income collected by Publisher with respect to Publisher's license of the Compositions to others (i) for use in Phonograph Records and (ii) for synchronization in audiovisual works.

iii. Solely with respect to Hamilton's royalties with respect to the Composition ONE LESS LONELY GIRL, Hamilton has requested and directed that 10% of the royalties otherwise actually payable to Hamilton from such Composition be paid directly to Thomas Oliveria and Vance Tate in accordance with the Release and Settlement Agreement dated as of August __ [sic], 2011 ("The One Less Lonely Girl Settlement"), relevant portions of which are attached to this Agreement as Exhibit A.

7. Shin and Hamilton have advised Majic and Publisher that they are no longer writing together. Accordingly, notwithstanding anything to the contrary contained in the Agreement or in paragraph 2 above, the parties hereby agree that with respect to Publisher's option to extend the Term for the First Option Period and Second Option Period, Publisher will have the option to extend the Term of the Agreement with respect to Shin and/or Hamilton, or both ("Continuing Writer"). If Publisher exercises such option with respect to either or both Continuing Writers, then this Agreement will be deemed modified as follows: (a) the MDRC for each Continuing Writer will be 50% of the MDRC that otherwise applies under the Agreement; and (b) the Advance payable to the Continuing Writer concerned will be 50% of the Advance that is otherwise applicable under the Agreement. If Publisher does not exercise its option to extend the Term for a particular Writer ("Dropped Writer"), then the Term will expire with respect to such Writer.

8. Majic, Shin and Hamilton, each, individually, warrant and covenant that each has the full right and power to enter into this Modification and to grant to Publisher all rights granted herein and to fully perform each and every term of the Agreement and this Modification. Furthermore, neither Majic, Shin nor Hamilton have transferred or assigned their rights to be paid hereunder to any party. For the avoidance of doubt, there are no third parties who may look to Publisher for payment or have any claim to any of the Compositions or any other rights granted to Publisher under the Agreement or this Modification.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

9. Except as expressly modified above, the Agreement is hereby ratified and reaffirmed, and shall remain in full force and effect.

10. This Modification may be executed in counterparts.

Very truly yours,

SONY/ATV SONGS LLC

By______________________________
An Authorized Signatory

THE LA REID MUSIC PUBLISHING COMPANY LLC

By______________________________
An Authorized Signatory

ACCEPTED AND AGREED:

______________________________
Hyuk Shin, individually and d/b/a
The Publishing Designee of Hyuk Shin

______________________________
Sean Hamilton, individually and d/b/a
The Publishing Designee of Sean Hamilton

MAJIC ENTERTAINMENT, LLC

By______________________________
An Authorized Signatory

9. Except as expressly modified above, the Agreement is hereby ratified and reaffirmed, and shall remain in full force and effect.

10. This Modification may be executed in counterparts.

Very truly yours,

SONY/ATV SONGS LLC

By______________________________
An Authorized Signatory

THE LA REID MUSIC PUBLISHING COMPANY LLC

By______________________________
An Authorized Signatory

ACCEPTED AND AGREED:

______________________________
Hyuk Shin, individually and d/b/a
The Publishing Designee of Hyuk Shin

______________________________
Sean Hamilton, individually and d/b/a
The Publishing Designee of Sean Hamilton

MAJIC ENTERTAINMENT, LLC

By______________________________
An Authorized Signatory



H.S

By______________________________
An Authorized Signatory

THE LA REID MUSIC PUBLISHING
COMPANY LLC

By______________________________
An Authorized Signatory

ACCEPTED AND AGREED:

______________________________
Hyuk Shin, individually and d/b/a
The Publishing Designee of Hyuk Shin

______________________________
Sean Hamilton, individually and d/b/a
The Publishing Designee of Sean Hamilton

MAJIC ENTERTAINMENT, LLC

By______________________________
An Authorized Signatory

10. This Modification may be executed in counterparts.

Very truly yours,

SONY/ATV SONGS LLC

By______________________________
An Authorized Signatory

THE LA REID MUSIC PUBLISHING COMPANY LLC

By______________________________
An Authorized Signatory

ACCEPTED AND AGREED:

______________________________
Hyuk Shin, individually and d/b/a
The Publishing Designee of Hyuk Shin

______________________________
Sean Hamilton, individually and d/b/a
The Publishing Designee of Sean Hamilton

MAJIC ENTERTAINMENT, LLC

By______________________________
An Authorized Signatory

# Schedule A

to the modification agreement by and between The LA Reid Music Publishing Company LLC, EMI April Music, LLC, Majic Entertainment, LLC, Hyuk Shin and Sean Hamilton, dated as of January 1, 2014.

---

Payment Instructions

To Thomas Oliveria & Vance Tate % Chris Brown:

Payment Total: $24,766.66*

Payment Address:

Brown & Rosen, LLC IOLTA Account
% Brown & Rosen LLC
Attorneys at Law
77 Franklin Street
3rd Floor
Boston, MA 02110
Attn: Christopher Brown, Esq.

---

To Hyuk Shin:

Payment Total: $20,642.50

Payment Address:

Mr.Hyuk Shin
5440 Tujunga Avenue #608
North Hollywood, CA 91601

---

To Sean Hamilton:

Payment Total: $19,050.50

Payment Address:

Sean Hamilton
217-39 99th Avenue
Queens Village, NY 11429

---

To Juan Catala % Ian Waldon:

Payment Total: $2500

Payment Address:

The Waldon Law Group, LLP
112 West 34th Street, 18th Floor
New York, NY 10120
Attn: Ian P. Waldon, Esq

Fed ID: 26-3012292

---

* Further a letter of direction indicating 10% of all future royalties actually paid to Sean Hamilton and Hyuk Shin in relation to "One Less Lonely Girl" should be paid to Tate/Olivera.

# EXHIBIT B

# RELEASE AND SETTLEMENT AGREEMENT

THIS RELEASE AND SETTLEMENT AGREEMENT (the "Agreement") is made and entered into as of the ___ day of August, 2011 (the "Effective Date"), by and between each of VANCE TATE ("Tate") and THOMAS OLIVERIA ("Oliveria"), individually and collectively doing business as "New East Management" ("New East"), all c/o Brown & Rosen, LLC, 77 Franklin Street, 3rd Floor, Boston, Massachusetts, 02110, attention Chris Brown, Esq., on the one hand, and each of SEAN HAMILTON ("Hamilton"), HYUK SHIN ("Shin"), THE L.A. REID MUSIC PUBLISHING COMPANY, LLC ("LARMPC"), c/o 500 Bishop Street, Suite A-4, Atlanta, Georgia 30318, and EMI APRIL MUSIC, INC. ("EMI"), c/o Pryor Cashman, LLP, 7 Times Square, New York, New York 10036, Attention: Donald S. Zakarin, Esq., on the other hand.

## WITNESSETH

WHEREAS, New East, on the one hand, and Hamilton and Shin, on the other hand, entered into that certain management agreement dated as of August 2nd, 2008 (the "Management Agreement"), whereby New East agreed to render personal management services to Hamilton and Shin in connection with their careers as songwriters and record producers; and

WHEREAS, the Management Agreement provided Hamilton and Shin with the right to terminate the term of that agreement if certain conditions precedent were not met by New East; and

WHEREAS, the Management Agreement nonetheless provided for certain post-termination commissions to be paid to New East, and for New East to enjoy certain other benefits if certain other conditions precedent were met; and

WHEREAS, Hamilton and Shin effectively terminated the term of the Management Agreement by notice to New East dated February 12, 2009 (the "Termination Notice"); and

WHEREAS, in the interim since the transmittal of the Termination Notice to New East by Hamilton and Shin and the termination of the term of the Management Agreement thereby, a controversy arose between New East, on the one hand, and Hamilton and Shin, on the other hand, concerning the interpretation of certain provisions of the Management Agreement, wherein New East claimed from time-to-time that it was entitled, pursuant to certain terms and conditions of the Management Agreement, to be paid certain post-term commissions on revenues earned by Hamilton and Shin in various forms, and also that New East was entitled to be assigned a portion of Hamilton and Shin's collective copyright interest in the musical composition entitled "One Less Lonely Girl" (the "Composition"), as recorded in various sound recordings and audio-visual recordings by the recording artist professionally known as "Justin Bieber" ("Bieber") (the sound recordings and audio-visual recordings thereof each being referred to as a "Bieber Recording," and collectively as the "Bieber Recordings"); and

WHEREAS, on or about March 22, 2011, Tate, Oliveria and New East (collectively, the "Plaintiffs") brought an action (the "Action") in United States District Court for the Southern District of New York (case no. 11-CV-0981), against Hamilton, Shin and certain of their music publishing affiliates and copyright administrators, LARMPC and EMI, in an attempt to enforce those certain rights Tate, Oliveria and New East claimed to have under the Management Agreement with respect to the Composition, the Bieber Recordings and otherwise, and further alleging, *inter alia*: ownership of a portion of the copyright in the Composition; breach of contract by Hamilton and Shin with respect to the Management Agreement; and fraud, conversion and copyright infringement with respect to the Composition; and

WHEREAS, Hamilton and Shin have consistently and repeatedly denied the validity of such claims made by Tate, Oliveria and New East in the Action; and

WHEREAS, the parties to this Agreement now desire to compromise and settle all claims and causes of action between them with respect to the Composition, the Bieber Recordings, the Management Agreement and all other claims and allegations arising in connection therewith (including, without limitation, causing the dismissal with prejudice of the Action itself), from the beginning of time until the date of full execution and delivery of this Agreement by all parties hereto, except as otherwise provided in this Agreement), and to set forth herein their understandings and agreements with respect to the settlement of all claims brought, without any fault, blame or liability being admitted by any such party with respect thereto; and

WHEREAS, it is expressly understood and agreed that the terms of this Agreement are contractual and not merely recitals and that the agreements herein contained, and the consideration transferred, is to compromise disputed claims, avoid litigation and buy peace, and that neither any payments made nor releases or other consideration given shall be construed as an admission of liability on the part of any party, all liability being expressly denied;

NOW, THEREFORE, in consideration of the mutual promises, covenants, warranties and agreements set forth herein, the sufficiency of which is hereby acknowledged, and for other good and valuable consideration, the parties hereto mutually covenant and agree as follows:

1. (a) (i) The parties hereto acknowledge and agree that, as between Hamilton and Shin, collectively, on the one hand, and the Plaintiffs, on the other hand, the Plaintiffs shall be entitled to receive, and shall so receive, a share of the revenues from the commercial exploitation (including but not limited to synchronization rights, public performances, physical and digital sales, streams, you-tube uses, etc.) of the Composition equal to ten percent (10%) of such revenues otherwise payable to Hamilton and Shin arising under Hamilton's and Shin's collective copyright interest in the Composition from the date of the initial exploitation thereof (including recorded derivatives thereof, whether by Bieber personally or third party artists) and actually otherwise payable to Hamilton and Shin pursuant to their publishing agreements with, *inter alia*, LARMPC and EMI. Hamilton and Shin hereby warrant and represent that they own, subject to the terms and conditions of their agreements with, *inter alia*, LARMPC and EMI, fifty percent (50%) of the copyright in the Composition. For the avoidance of doubt, nothing contained herein, or in the Management Agreement, or elsewhere, shall be construed as according or assigning to the Plaintiffs, or to any of them, a copyright ownership interest (or any administrative rights) in or to the Composition, or in or to any Bieber Recordings in which the Composition may be embodied; the sole right being granted is a share of the revenue payable to Hamilton and Shin. Accordingly, and notwithstanding anything to the contrary contained in this Agreement, it is specifically understood and agreed that the provisions of this Paragraph 1(a) shall not be deemed to have replaced, amended or otherwise modified any existing agreements between the individual author/parties and their respective music publishing designees or any other third-party(ies)..

(ii) In order to effectuate the timely and accurate payment to Plaintiffs of amounts which may become payable to them in connection with the exploitation of the Composition, the parties hereto, promptly following the full execution and delivery of this Agreement, will execute, acknowledge and deliver to EMI (for itself and on behalf of LARMPC) and to Broadcast Music, Inc. ("BMI," as the performing rights organization of which Hamilton and Shin are writer-members, as such term commonly is understood in the United States music publishing industry) such documents as reasonably are necessary to evidence and effectuate the parties' respective rights hereunder, in the form of an irrevocable so-called "letter of direction" in such recipients' customary forms (but subject at all times to such recipients' policies with respect to the acceptability of such letters of direction), a form of which is attached hereto as Exhibit "A" (which Exhibit is incorporated herein by this reference and made a part

hereof), as well as any documentation reasonably necessary and desirable for the applicable music publishers or copyright administrators having rights in connection with the Composition in order for them to allocate or re-allocate, as the case may be, such income as may be have been payable, or may become payable in the future, to the Plaintiffs (which such documentation the parties hereto agree to prepare and execute either prior to or promptly following the full execution of this Release Agreement). For the avoidance of doubt, in no event shall this Agreement or the obligations undertaken by Hamilton and Shin herein reduce the share of revenue payable to EMI and LARMPC, or Majic Entertainment, LLC d/b/a "Adrawn Music Publishing" (i.e., the net effect of this Agreement and the payments to be made to Plaintiffs hereunder shall be that such payments shall be deducted only from, and shall reduce only, Hamilton's and Shin's net shares of income arising out of the exploitation of the Composition).

(b) Accordingly, consistent with the foregoing provisions of this Clause 1, commencing with the initial commercial exploitation of the Composition (including derivatives or remakes thereof), the Plaintiffs, collectively, shall be entitled to receive ten percent (10%) of all amounts thereafter generated from the exploitation of the Hamilton's and Shin's interest in the Composition and otherwise actually payable to Hamilton and Shin, in all territories and at any time, including, without limitation, ten percent (10%), respectively, of all amounts payable to Hamilton and Shin and generated from, without limitation: (i) the mechanical reproduction of the Composition on phonorecords, (ii) public performance income and (iii) other licensing and exploitation of the Composition. Amounts payable to the Plaintiffs as provided in the immediately preceding sentence by reason of the exploitation of the Composition in the Bieber Recordings shall be calculated, adjusted, prorated and paid in accordance with the provisions of the so-called "controlled composition clause" embodied in Clause 5 of the record producer agreement between A-Rex Productions, Inc., furnishing the services of Hamilton and Shin, on the one hand, and Mogul Music Group, LLC, furnishing the services of Bieber, on the other hand, dated as of May 29, 2009, and applicable to, *inter alia*, the Composition and the Bieber Recordings (the "Producer Agreement") (a true and accurate copy of such provision is attached hereto as Exhibit "B" hereof and incorporated herein by this reference), to the extent that the Producer Agreement governs such exploitation(s). Plaintiffs shall also be entitled to the same percentage and payments detailed in this paragraph for the reproduction of the Composition for performances by artists other than Bieber.

(c) (i) Amounts payable to the Plaintiffs pursuant to Clause 1(b), above, for exploitations of the Composition that are governed hereby shall be calculated, adjusted and paid in the same manner and at the same time as corresponding payments are made to Hamilton and Shin (or made on their behalf) under the music publishing agreement by and between Hamilton and Shin, on the one hand, and EMI and LARMPC dated as of May 1, 2009, and shall be accompanied by copies of accounting statements with respect thereto, except as set forth herein to the contrary.

(ii) The parties to this Agreement expressly acknowledge and agree that the obligation to account to and pay the Plaintiffs pursuant to this Agreement is the sole obligation of Hamilton and Shin and EMI and LARMPC shall have no obligation to Plaintiffs with respect thereto. However, as an accommodation to Hamilton and Shin, EMI and LARMPC will use reasonable efforts to comply with a timely direction letter in form and substance satisfactory to EMI and LARMPC and executed by Hamilton and Shin which requests EMI and LARMPC to make payments to Plaintiffs on behalf of Hamilton and Shin out of monies otherwise actually payable by EMI and LARMPC to Hamilton and Shin, provided, however, that any such payment will be made solely as an accommodation to Hamilton and Shin and in no event will Plaintiffs have any rights against EMI or LARMPC whatsoever, including without limitation any audit rights, in connection with such payment (or non-payment). If EMI, LARMPC or any other third-party licensee of the Composition fails or refuses to account to you, Hamilton and Shin shall render accountings, and pay any share of revenues due you hereunder, within ninety (90) days after Hamilton and Shin receive the applicable statement and payment from EMI, LARMPC or such third-party, as the case may be. For the avoidance of doubt, neither Hamilton nor Shin shall in any event be deemed in breach hereof in the event that EMI, LARMPC or such third-party,

as the case may be, does not account to Plaintiffs directly. All royalty statements and all other accounts rendered to Plaintiffs shall be binding upon each of them and not subject to any objection by any of them for any reason unless specific objection in writing, stating the basis thereof, is given to Hamilton and Shin within one (1) year from the date such statement or accounting is rendered. Plaintiffs shall be foreclosed from maintaining any action, claim or proceeding against Hamilton and Shin in any forum or tribunal with respect to any statement or accounting due hereunder unless such action, claim or proceeding is commenced against Hamilton and Shin in a court of competent jurisdiction within two (2) years after the date such statement or accounting is rendered.

(d) Promptly following the full execution of this Agreement by all parties hereto, Hamilton and Shin will instruct in writing and use their commercially reasonable efforts to cause to be provided to Tate and Oliveria, one time, and at Hamilton's and Shin's sole cost and expense, one (1) commemorative award plaque, of the sort typically issued by or on behalf of the Recording Industry Association of America (the "RIAA"), to each of Tate and Oliveria, indicating the now-current so-called "platinum certification" designation of the primary so-called "album format" version of the Bieber Recording, subject at all times to the policies of the RIAA and the applicable record label-member thereof responsible for the issuance of such plaques. It is understood and agreed that the inadvertent, non-repetitive failure of either Hamilton or Shin, or any party hereto, to cause the issuance of any such plaque to either Tate or Oliveria shall not be deemed a breach of this Agreement. Tate, Oliveria or Christopher Brown ("Brown"), may, at their own expense, obtain additional copies/plaques which all defendants hereby consents and approves, provided, however, that neither Tate's, Oliveria's nor Brown's failure to so obtain additional copies or plaques will in any way be deemed to be a breach of this Agreement.

(e) The parties hereto agree to cooperate with each other in connection with any documentation and other and further documents or other requirements that may be necessary to carry out the provisions of this Clause 1.

(f) Hamilton's and Shin's rights hereunder shall be subject to all otherwise applicable mechanical and performance society regulations (e.g., in the event a foreign translation of the Composition is prepared and a society accords an interest to a translator).

2. (a) In consideration of the covenants herein, the Plaintiffs, and each of them, on their own behalf and on behalf of their respective affiliates, parent corporations, subsidiaries, divisions, associates, owners, officers, directors, shareholders, partners, attorneys, agents, employees, representatives, successors, heirs and assigns, hereby release and forever discharge Hamilton, Shin, EMI, LARMPC (collectively, the "Releasees") and their respective affiliates, parent corporations, subsidiaries, divisions, licensees, joint venturers, associates, owners, officers, directors, shareholders, partners, attorneys, agents, employees, representatives, successors, heirs and assigns, from any and all claims, actions or causes of action, demands, rights, monies and/or liabilities of every nature and description whatsoever, whether at law or in equity, for damages or any other things whatsoever, whether presently known or unknown, existing as of the date of this Agreement and related to the Composition, the Bieber Recordings and/or the Management Agreement, including, but by no means limited to, the claims asserted and those that could have been asserted in the Action, and excepting therefrom only claims arising under this Agreement.

(b) In consideration of the covenants herein, the Releasees, on their own behalf and on behalf of their respective affiliates, parent corporations, subsidiaries, divisions, joint venturers, associates, owners, officers, directors, shareholders, partners, attorneys, agents, employees, representatives, successors, heirs and assigns, hereby release and forever discharge the Plaintiffs and their respective affiliates, parent corporations, subsidiaries, divisions,, licensees, associates, owners, officers, directors, shareholders, partners, attorneys, agents, employees, representatives, successors,



SH

heirs and assigns, from any and all claims, actions or causes of action, demands, rights, monies and/or liabilities of every nature and description whatsoever, whether at law or in equity, for damages or any other things whatsoever, whether presently known or unknown, existing as of the date of this Agreement and relating to the Composition, the Bieber Recordings or the Management Agreement, including, but by no means limited to, the claims asserted and those that could have been asserted in response to the Action, and excepting therefrom only claims arising under this Agreement.

(c) In consideration of the covenants herein, and subject to the exceptions set forth below, each of the Releasees, on his, her or its own behalf and on behalf of his, her or its respective affiliates, parent corporations, subsidiaries, divisions, associates, owners, officers, directors, shareholders, partners, attorneys, agents, employees, representatives, successors, heirs and assigns, hereby releases and forever discharges each of the other Releasees and their respective affiliates, parent corporations, subsidiaries, divisions, associates, owners, officers, directors, shareholders, partners, attorneys, agents, employees, representatives, successors, heirs and assigns, from any and all claims, actions or causes of action, demands, rights and/or liabilities of every nature and description whatsoever, whether at law or in equity, for indemnification, whether presently known or unknown, existing as of the date of this Release Agreement and arising from the claims asserted and that could have been asserted in the Action. Notwithstanding the foregoing, nothing contained in this Release Agreement shall constitute or cause any waiver, modification, relinquishment or release of any rights or remedies arising under any producer, executive producer, recording artist, music publishing, administration or related agreement between or among any of the individual parties to this Release (including without limitation, their respective record company, music publisher, co-publisher, or administrator with respect to the Composition), including, without limitation, any rights of indemnification thereunder.

3. Immediately following the full execution and delivery of this Agreement by all parties hereto, the Plaintiffs and the Releasees shall file with the appropriate court a Stipulation of Dismissal with Prejudice in the form attached hereto as Exhibit "C" and incorporated herein by this reference dismissing all claims that were or could have been asserted in the Action with prejudice and without costs or attorneys' fees awarded to any party hereto.

4. The terms of this Agreement are binding upon and shall inure the benefit of the parties hereto and their respective affiliates, agents, parents, successors, assigns, heirs and beneficiaries.

5. (a) All parties hereto agree that the terms of this Agreement, and all negotiations relating hereto, shall be kept confidential and shall not be made known to anyone who is not a party to this Agreement or be disclosed in any manner, except to (a) their attorneys, accountants and tax advisors, who shall be bound by this confidentiality provision; (b) as required by law (including on tax returns and in response to legal process); or (c) to permit the transmittal and recording of the documents contemplated by Clause 1(a)(ii) above. The parties hereto expressly agree that each of them shall not discuss or make known to any person who is affiliated with the media, news, television, radio, broadcast, telecommunications, reporting or publishing entity or organization, or any other person, organization or entity who disseminates news to the general public, any matter related to this Agreement, the claims brought by the Plaintiffs against the Releasees in the Action, or matters related to the Action, or claims that could have been brought against any party herein. Notwithstanding the foregoing, this confidentiality provision shall not prevent any party hereto from responding to any request by a self-regulatory organization, disclosing information required by law, rule, regulation, order or guideline of any court or regulatory body, or providing information necessary for the preparation and filing of any tax returns.

(b) Each party hereto agrees that such party shall not, publicly or privately, make any disparaging statements, comments, or remarks about any of the other parties hereto, and shall not

engage in any activity of any nature which in any way results in any disruption of the routine business of any of the other parties hereto, or which is damaging to the reputation of any of the other parties hereto, or which is otherwise detrimental to any of the other parties' respective business activities or relationships.

6. This Agreement is intended to be performed in accordance with all applicable laws, ordinances, rules and regulations.

7. (a) This Agreement contains the entire understanding and agreement between the parties and is intended to settle all disputes concerning the Composition, the Bieber Recordings and the Management Agreement between the Plaintiffs, on the one hand, and the Releasees, on the other hand. This Agreement supersedes any prior understandings or agreements between the parties and there are no representations, agreements, arrangements or undertakings, oral or written, that set forth the terms of this Agreement which are not herein fully expressed.

(b) The failure by any party hereto to perform any of its obligations hereunder shall not be deemed a breach of this Agreement unless the party alleging such failure gives the allegedly breaching party written notice of such failure to perform and such failure is not corrected within thirty (30) days from and after the allegedly breaching party's receipt of such notice.

(c) All notices under this Agreement must be in writing in order to be effective, and shall be deemed to have been duly given or made (i) on the date delivered in person, (ii) on the date indicated on the return receipt if mailed postage prepaid, by certified or registered U.S. Mail, with return receipt requested, or (iii) if sent by Federal Express, U.P.S. Next Day Air or other nationally recognized overnight courier service or overnight express U.S. Mail, with service charges or postage prepaid, then on the next business day after delivery to the courier service or U.S. Mail (if sent in time for and specifying next day delivery). In each case (except for personal delivery) such notices and any other requests, demands, and other communications shall be sent to a party at its address as set forth on the first page of this Agreement. It is also stipulated and agreed that, for purposes of service of legal process, the addresses of Plaintiffs, on the one hand, and Hamilton and Shin, on the other hand, shall be as follows:

| "Plaintiffs" | Hamilton and Shin |
|---|---|
| Vance Tate and Thomas Oliveria<br>c/o Brown & Rosen, LLC<br>77 Franklin Street<br>3rd Floor<br>Boston, Massachusetts 02110<br>Attention: Chris Brown, Esq. | Messrs. Sean Hamilton and Hyuk Shin<br>c/o The Sidman Law Firm, LLC<br>3455 Peachtree Road, NE<br>Fifth Floor<br>Atlanta, Georgia 30326<br>Attention: Steven S. Sidman, Esq. |

8. This Agreement shall be construed without regard to the party or parties responsible for its preparation, and it shall be deemed to have been prepared by all parties. Any ambiguity or uncertainty arising herein shall not be interpreted or construed against any party hereto on the basis that such party prepared or drafted a particular provision of this Agreement.

9. It is the intention of the parties hereto in entering into this Agreement that the same shall be effective as a full and final accord and satisfaction and release of each claim released above. The Plaintiffs and the Releasees (collectively, the "Releasors") acknowledge and agree that certain states



SHS

may have laws, statutes and common law rulings which relate to releases and the effect thereof. Without acknowledging whether such laws apply to this Agreement, the Releasors further acknowledge and agree that they are aware that they may hereafter discover material facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of this Agreement, but that it is their respective intention to nevertheless release, as applicable, the claims referred to in this Agreement. Accordingly, each Releasor expressly waives any and all rights such party may have under any state's laws, statutes, regulations or common law principles relating to, or arising out of, a release and the effect thereof which would limit, impair or eliminate the effectiveness of the releases provided in this Agreement. The Releasors acknowledge and agree that they assume the risk of any mistake of fact or law with regard to all aspects of this Agreement and any asserted claims released in this Agreement.

10. In furtherance, but not in limitation of, Clause 9 hereof, each party hereto acknowledges that such party is familiar with the Section 1542 of the Civil Code of the State of California which provides as follows:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Each party hereto waives and relinquishes any right and benefit which she, he or it has or may have under Section 1542 (or other substantially similar legislation in the corresponding and appropriate jurisdiction) to the full extent that she, he or it may lawfully waive all such rights and benefits pertaining to the subject matter hereof. In connection with such waiver and relinquishment, each of the parties hereto acknowledges that she, he or it may hereafter discover claims or facts in addition to or different from those which she, he or it now knows or believes to exist with respect to the subject matter of this Agreement, but that it is each party's intention hereby to fully, finally and forever settle and release any and all matters, disputes and differences, known or unknown, suspected or unsuspected, which now exist, may exist or heretofore have existed between or between the parties, regarding the Composition, the Bieber Recordings or the Management Agreement. In furtherance of such intention, the releases herein given shall each be and remain in effect as a full and complete general release, notwithstanding the discovery or existence of any such additional or different claims or facts.

11. (a) Each party hereto represents and warrants that such party has the power and is duly authorized to enter into this Agreement with regard to all matters described herein upon the terms herein set forth.

(b) Each party hereto represents and warrants that such party has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity not a party hereto any claim, debt, covenant, agreement, contract, liability, demand, obligation, account, expense, action, cause of action or suit being released hereunder.

12. Each party hereto agrees to cooperate fully and to execute any and all supplemental documents and to take additional actions that reasonably may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement and which are not inconsistent with its terms.

13. Except as otherwise expressly set forth herein, or for breach hereof, each party shall refrain and forebear forever from commencing, instituting or prosecuting any lawsuits, actions or other proceedings against each other party based on, arising out of or in connection with any claim, debt, loss, covenant, agreement, contract, liability, demand, obligation, account, expense, action, cause of action or suit released hereunder. Each party hereto warrants and represents that, as of the date hereof, no litigation is currently pending or is presently contemplated in connection with any Composition.



SSS

14. This Release Agreement may be executed simultaneously in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Release Agreement may be executed by facsimile signature, but any party so executing this Release Agreement shall provide a signed original version of this Release Agreement promptly following the transmittal of the facsimile signature, although the failure to provide such an original version shall not affect the validity and efficacy hereof.

15. Each Releasor represents and warrants that:

(a) Each Releasor has read this Agreement in its entirety;

(b) The Releasor has had the opportunity to discuss all aspects of this Agreement with its, his or her attorneys and fully understands all of the provisions and their legal and practical effect, or has knowingly and voluntarily waived its, his or her right to do so; .

(c) The Releasor is signing this Agreement freely and voluntarily, without coercion of any kind, and with full knowledge and understanding of its contents;

(d) The Releasor has not assigned, pledged or transferred, or purported to assign, pledge or transfer, to any person or entity, any claim or right, or any portion thereof or interest therein, it, he or she releases or purports to release by this Agreement. The Releasor is the owner of the respective claims being released by and in accordance with this Agreement;

(e) The Releasor has the full right, power and authority to execute, deliver and perform this Release Agreement and to bind the Releasor to the terms of this Agreement; and

(f) No consent, approval, authorization or order of any court, governmental authority or third party is required in connection with the execution of this Agreement.

16. The Releasors acknowledge that the covenants contained in this Agreement provide good and sufficient consideration for every promise, duty, release, obligation and right contained in this Agreement.

17. All warranties, covenants, agreements and releases contained herein shall survive the execution hereof.

18. Any amendments or changes to the terms hereto shall be ineffective unless they are in writing and executed by all parties hereto. The Releasors further agree that there are no understandings, verbal or otherwise, pertaining to the subject matter hereof, except as set forth in this Agreement, and that in entering into this Agreement, no party is relying, or is entitled to rely, on any promise, inducement, assurance or expectation unless it is contained in this Agreement.

19. This Agreement and its validity, construction and effect shall be governed by the laws of the State of New York, applicable to agreements wholly to be performed therein. Any claim, dispute or disagreement in respect of this Agreement may be brought only in the courts of the State of New York, in Manhattan, or the federal courts within the State of New York, in New York County, which courts shall have exclusive jurisdiction thereof, and the parties hereto hereby waive any claim that such courts do not have jurisdiction or are an inconvenient forum. Any process in any action or proceeding commenced in any court may, among other methods, be served upon the parties hereto, as applicable, by delivering or mailing the same, via registered or certified mail, addressed to the applicable party, at

the address set forth on page one (1). Any such delivery or mail service shall be deemed to have the same force and effect as personal service within the State of New York.

20. The language of this Agreement has been approved by counsel for the parties hereto. This language shall be construed as a whole according to its fair meaning, and none of the parties hereto shall be deemed the draftsman of this Agreement or any part hereof, for purposes of any litigation which may arise hereafter between them. If any provision or portion of this Agreement shall be held for any reason to be unenforceable or illegal, that provision shall be severed from this Agreement and the remainder of this Agreement shall remain valid and enforceable between the parties hereto just as if the provision held to be illegal or unenforceable had never been included in this Agreement. Wherever used herein, the singular shall include the plural, the plural shall include the singular, and pronouns shall be read as masculine/feminine or neuter, as the context requires. Paragraph headings of this Agreement are for convenience only, and are not intended to expand or restrict the scope or substance of the provisions of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

Vance Tate

For and on behalf of himself and New East Management

Sworn to before me and signed in my presence, 19th day of August, 2011.

Notary Public:
Commission Expires: 6/14/13

Thomas Olvieria

For and on behalf of himself and New East Management

Sworn to before me and signed in my presence, 19th day of August, 2011.

Notary Public:
Commission Expires: 6/14/13

Sean Hamilton

**For and on behalf of himself and A-Rex Productions

Sworn to before me and signed in my presence, 28th day of ~~August~~ September, 2011.

JENNIFER L. PENNINGTON NOTARY EXP 11-18-2014 PUBLIC COLUMBIA COUNTY, GA

Notary Public:
Commission Expires: November 18, 2014

Hyuk Shin

** For and on behalf of himself and A-Rex Productions

Sworn to before me and signed in my presence, 28th day of ~~August~~ September, 2011.

JENNIFER L. PENNINGTON NOTARY EXP 11-18-2014 PUBLIC COLUMBIA COUNTY, GA

Notary Public:
Commission Expires: November 18, 2014

EMI APRIL MUSIC, INC.

By: ______________________
An Authorized Representative

Sworn to before me and signed in my presence, 19th day of ~~August~~ October, 2011.

Notary Public:
Commission Expires: 1/29/15

STEPHEN DALLAS
Notary Public, State of New York
No. 02DA6180193
Qualified in New York County
Commission Expires Jan. 29, 2015

THE L.A. REID MUSIC PUBLISHING COMPANY, LLC

By: ______________________
An Authorized Representative

Sworn to before me and signed in my presence, 10th day of ~~August~~ October, 2011.

Amanda Brown



SS

AMANDA BROWN
MY COMMISSION EXPIRES
NOTARY
PUBLIC
10/20/2011
FULTON COUNTY, GEORGIA

Notary Public:
Commission Expires: October 20, 2011