UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUAN CATALA, d/b/a MAJIC
ENTERTAINMENT LLC, d/b/a
ADRAWN MUSIC PUBLISHING,

**ORDER**

Plaintiff,

18 Civ. 8401 (PGG)

- against -

JOOMBAS CO. LTD., JOOMBAS
MUSIC INT'L, JOOMBAS LLC,
JOOMBAS MUSIC GROUP, HYUK
SHIN, THE LA REID MUSIC
PUBLISHING COMPANY LLC, EMI
APRIL MUSIC INC., and SONY/ATV
SONGS LLC,

Defendants.

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Juan Catala, d/b/a Majic Entertainment LLC, d/b/a Adrawn Music

Publishing ("Majic") brings this action against songwriter Hyuk Shin and four companies that

Shin owns (Joombas Co. Ltd., Joombas Music International, Joombas LLC, and Joombas Music

Group, collectively, the "Joombas Defendants"), asserting claims for breach of contract, fraud,

tortious interference with contractual relations, violation of the Copyright Act, and for an

accounting. Plaintiff also brings breach of contract and breach of fiduciary duty claims against

the LA Reid Music Publishing Company, LLC ("Reid"), EMI April Music Inc. ("EMI"), and

Sony/ATV Songs LLC ("Sony") (collectively, "Reid" or the "Reid Defendants"). (Cmplt. (Dkt.

No. 1)) Plaintiff's claims arise from a series of agreements between Plaintiff, Shin, the Joombas

Defendants, and the Reid Defendants – or combinations thereof – governing the rights to

compositions authored by Shin.

Shin, the Joombas Defendants, and the Reid Defendants have moved to dismiss.

For the reasons stated below, Shin's motion to dismiss will be granted in part and denied in part;

the Joombas Defendants' motion will be granted; and the Reid Defendants' motion will be granted.

BACKGROUND[1]

## I.     FACTS

### A.     Contracts 1 and 2:  The Co-Publishing Agreements

Plaintiff is a music publisher.  (Cmplt. (Dkt. No. 1) ¶ 1)  In April and May 2009, Plaintiff entered into two related co-publishing agreements.  In April 2009, Plaintiff entered into a contract with Defendant Shin, a singer and songwriter, and non-party Sean Hamilton ("Contract 1"), and in May 2009, with Defendants Reid and EMI ("Contract 2" or the "Reid Agreement").[2]  (Id. ¶¶ 10-11; Contract 1 (Dkt. No. 1-1); Contract 2 (Dkt. No. 1-2))

### 1.     Contract 1: The Majic-Shin Agreement

Contract 1 – which identifies Majic as "Publisher" and Shin, Hamilton, and their designees as "you" – is "an exclusive co-publishing and administration agreement . . . between you and Publisher." (Contract 1 (Dkt. No. 1-1) at 1)  Contract 1 requires Shin to "[d]eliver to Publisher, for exclusive exploitation, all Compositions,"[3] and provides that "Publisher will be the exclusive co-publisher and exclusive administrator of all Compositions." (Id. at 1)

---

[1] The following facts are drawn from the Complaint and are presumed true for purposes of resolving Defendants' motion to dismiss.  See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).  "In assessing the legal sufficiency of [a plaintiff's] claim[s] [on a motion to dismiss,]" the court may "consider . . . the complaint and any documents attached thereto or incorporated by reference and 'documents upon which the complaint relies heavily.'" Bldg. Indus. Elec. Contractors Ass'n v. City of N.Y., 678 F.3d 184, 187 (2d Cir.2012) (quoting In re Citigroup ERISA Litig., 662 F.3d 128, 135 (2d Cir.2011) (internal quotation marks omitted).

[2] Defendant Sony is not a signatory to either Contract 1 or Contract 2.

[3] Contract 1 defines "Compositions" as "(a) all musical compositions . . . written by you prior to or during the Term [of Contract 1] and (b) any and all other compositions written by you and/or acquired by you or your Affiliates during the term [of Contract 1]." (Id. at 1, ¶ 3)

Pursuant to Contract 1, "Publisher is granted 50% of the copyright" of each composition "written entirely by you."[4] (Id.) Contract 1 further provides that Shin "hereby sell[s], transfer[s] and assign[s] to Publisher . . . an undivided 50% interest in all of Your Interest in the Compositions, including without limitation in and to all copyrights therein . . . . It is the essence of this Agreement that Publisher acquire an undivided 50% interest in all of Your Interest in all Compositions." (Id. at 2, ¶ 5) Moreover, "it is the intent of the parties that Publisher . . . shall be the exclusive administrator of all rights in and to the Compositions and Publisher shall have . . . the broadest possible rights to administer one hundred percent (100%) of Your Interest in the Compositions and otherwise exploit the Compositions. Accordingly, with respect to Your Interest in the Compositions, Publisher . . . shall have the sole and exclusive right" to

> license the exploitation of the Compositions in all forms, media, technologies and configurations . . . ; print, publish, rent and/or sell printed editions and other reproductions of the Compositions . . . ; collect all monies whatsoever derived from exploitation of the Compositions, whenever earned; license public performance rights . . . ; make arrangements, adaptations and other changes; and otherwise administer and grant rights in, and with respect to, the Compositions to the fullest extent possible. In connection with the foregoing, you hereby appoint Publisher your true and lawful attorney to secure and renew copyrights, initiate and compromise infringement claims, and to execute in your name any and all documents reasonably necessary or desirable to accomplish the foregoing and/or effectuate Publisher's rights hereunder.

(Id.)

Contract 1 also requires Shin to "represent, warrant and covenant that," inter alia, Shin "ha[s] not entered into (and will not enter into) any agreement (including, without limitation, any license) which would interfere with any of the rights granted to Publisher pursuant to this Agreement"; and "will not perform or render any services for the purposes of

---

[4] Contract 1 terms such compositions "New Compositions" or "Full New Compositions." (Id.)

3

writing musical compositions either directly or indirectly for any person or entity other than Publisher and . . . will not enter into [any] agreement with respect to any Compositions[] or rights with respect thereto." (Id. at 4-5, ¶ 9)

Contract 1 contemplates a separate agreement – namely, Contract 2, "Publisher's agreement (the 'Reid Agreement') with LA Reid Music Publishing Company, LLC and EMI Music Publishing, Inc." (Id. at 1, ¶ 2) Contract 1 provides that "[f]or purposes of clarity, the Term of this Agreement shall be coterminous with the term of the Reid Agreement." (Id.)

Contract 1 also sets out the structure for royalty payments among Majic, Shin, and Reid. Contract 1 contemplates Majic's receipt of royalties from Reid pursuant to Contract 2, and provides that "[f]rom all royalties actually received by Publisher from Reid under the Reid Agreement [Contract 2] from the exploitation of Compositions throughout the world . . ., Publisher shall," after making certain deductions, "pay to you an amount equal to fifty percent (50%) of the balance remaining, and the remaining fifty percent (50%) thereof shall be retained by Publisher for its sole use and benefit." (Id. at 3, ¶ 6) Majic, similarly, agrees to pay Shin 50 percent of advances received from Reid pursuant to Contract 2, after making certain deductions, and retain the remaining portion of the advances. (Id.)

Finally, Contract 1 provides that it "shall be deemed amended in all respects necessary to conform to the provisions of the Reid Agreement [Contract 2]," and provides that, in entering Contract 1, Shin "agree[s] to amend or modify any provisions of [Contract 1] to conform to the provisions of the Reid Agreement [Contract 2]," and agrees to "comply with any other restriction, and . . . grant any additional rights, as may be required by Reid" pursuant to Contract 2. (Id. at 7, ¶ 13)

4

## 2.    Contract 2: The Reid Agreement

Contract 2 – which identifies Reid and EMI as "Publisher"; Majic as "you"; and Shin and Hamilton as "Writer" – is also "an exclusive co-publishing and administration agreement." (Contract 2 (Dkt. No. 1-2) at 1)  Its terms are similar to the terms of Contract 1, except that Majic's role in Contract 2 to is akin to Shin's role in Contract 1, while Reid's and EMI's role in Contract 2 is akin to Majic's role in Contract 1.

The preamble to Contract 2 states that, during the term of the agreement, Majic "shall cause Writer to Deliver to Publisher, for exclusive exploitation, all Compositions," and that "Publisher will be the exclusive administrator and co-publisher of Your Interest in all Compositions. . . ."[5]  (Id.)  However, Contract 2 also states that "You" – that is, Majic – "shall Deliver to Publisher each Composition."  (Id. at 2, ¶ 3)

Pursuant to Contract 2, Majic agreed to "sell, grant, transfer, and assign" to Reid and EMI "an undivided 50% interest in all of [Majic's] Interest in the Compositions, including, without limitation, the copyrights therein"; Majic would "retain the remaining 50% copyright interest."  (Id. at 3, ¶ 5)  Majic granted to Reid and EMI – as Shin had granted to Majic – "the sole and exclusive right and license . . . to:

> license the exploitation of the Compositions in all forms, media, technologies and configurations . . . ; print, publish, rent and/or sell printed editions and other reproductions of the Compositions . . . ; collect all monies whatsoever derived from exploitation of the Compositions and earned prior to or during the [Contract 2] Term . . . ; license public performance rights; make arrangements, adaptations and other changes; and otherwise administer and grant rights in, and with respect to, the Compositions to the fullest extent possible.  In connection with the

---

[5] Contract 2 employs slightly different terminology than Contract 1 in defining "Compositions": "New Compositions" are "all musical compositions . . . written by Writer during the Term"; "Old Compositions" are "all musical compositions . . . written by Writer prior to the Term"; and "Acquired Compositions" are "all musical compositions . . . in which any right or interest is acquired by Writer or Writer's Affiliates prior to or during the Term." (Contract 2 (Dkt. No. 1-2) at 2 ¶ 3)

foregoing, you hereby appoint Publisher your true and lawful attorney-in-fact to: secure and renew copyrights in your, Writer's and Publisher's names, initiate and compromise infringement claims; and to execute in your and Writer's name any and all documents reasonably necessary or desirable to accomplish the foregoing and/or effectuate Publisher's rights hereunder . . . .

(Id. at 3, ¶ 5)

Contract 2 also contains terms regarding the payment of royalties and advances. As to royalties, Contract 2 describes the proportion of various categories of royalty payments that Majic and Reid will receive. With respect to the "Publisher's [s]hare of [p]erformance [i]ncome," for example, Majic and Reid would split the proceeds equally. (Id. at 6, ¶ 7) Royalties would be credited to "a single royalty account." (Id. at 7, ¶ 8) With respect to advances, Reid and EMI would pay a $125,000 advance to Majic during the initial term of the agreement, and for each subsequent term, Reid and EMI would pay Majic "[a]n [a]dvance equal to 70% of the royalties credited to [Majic's] royalty account during the immediately preceding 12-month period," subject to minimum and maximum advances. (Id. at 4-5, ¶ 6)

Finally, Contract 2 requires Majic to "represent, warrant and covenant that," inter alia, "neither [Majic] nor Writer ha[s] entered into (and will not enter into) any agreement (including, without limitation, any license) which would interfere with any of the rights granted to Publisher pursuant to this Agreement," nor "granted any rights with respect to Composition(s) to any Person," and that "neither Majic nor Writer will . . . perform or render any services for the purposes of writing musical compositions either directly or indirectly for any person or entity other than Publisher or . . . enter into any agreement with respect to any Compositions[] or rights with respect thereto." (Id. at 9, ¶ 10)

Attached to Contract 2 is a "Writer's Inducement" – signed by Shin and Hamilton – which states in relevant part:

In order to induce [Reid and EMI] (jointly, the "Publishers") to enter into the foregoing agreement . . . and make all payments as provided therein, the

6

undersigned agrees to be bound by all the terms, covenants and conditions therein contained as if the undersigned was a party thereto. . . . [T]he undersigned grants, transfers and assigns to the Publishers . . . all Compositions . . . and all copyrights therein; [and] ratifies all the warranties and representations made therein by [Majic]. . . .

(Writer's Inducement to Contract 2 (Dkt. No. 1-2) at 15)

### B.    Contract 3: The Modification

In January 2014, nearly five years after Contracts 1 and 2 were executed, "the parties amended Contract 2 pursuant to a Settlement Agreement reached by third parties with Shin, Majic, and Reid."[6]  (Cmplt. (Dkt. No. 1) ¶ 13)  This agreement is "Contract 3."[7] According to Contract 3, "Hamilton and Shin . . . made various claims that Majic . . . failed to make required royalty payments to them under the Writer Agreement [Contract 1]." (Contract 3 (Dkt. No. 1-3) at 2, ¶ 1)  Consequently, Hamilton and Shin "wish[ed] to modify certain provisions of the Agreement, including . . . certain payment and Delivery obligations." (Id.)

Whereas Contracts 1 and 2 contemplate Shin's (and Hamilton's) delivery of compositions to Majic, and Majic's delivery of those compositions, in turn, to the Reid Defendants, Contract 3 requires Hamilton and Shin to perform "any and all obligations" for Reid "which relate to the Compositions, [and] Delivery thereof," and makes them jointly and severally

---

[6] The "Settlement Agreement reached by third parties" is an agreement between Vance Tate, Thomas Oliveria, and their company, New East Management, on the one hand, and Hamilton, Shin, Reid, and EMI on the other, that was executed in September 2011. (Contract 3, Ex. B (Dkt. No. 1-3) at 13-23)  According to this agreement, in 2008 New East Management, Shin, and Hamilton entered into a contract by which New East would render personal management services to Shin and Hamilton. Shin and Hamilton terminated this contract in February 2009. (Id. at 13)  Tate, Oliveria, and New East Management contended that, under this contract, they were entitled to certain post-term commissions on revenues Shin and Hamilton earned, and were entitled to a portion of the copyright interest in one of Shin's and Hamilton's songs. Tate, Oliveria and New East Management brought suit in this District, and the Settlement Agreement resolved that lawsuit. (Id.)

[7] Sony/ATV Songs LLC also appears on the signature line of Contract 3.

7

liable with Majic for those responsibilities, "[n]otwithstanding that all of the obligations to [Reid and EMI] under [Contract 2] are solely Majic's obligations." (Id. at 2, ¶ 2) Contract 3 also significantly alters the payout of royalties and advances related to Shin's Compositions, such that Reid will pay directly to Shin certain royalty shares and advances, rather than routing those payments through Majic. (Id. at 3, ¶¶ 5-6) With respect to royalties, "the royalties otherwise accruing to Majic's credit under the [Contract 2] shall be divided among Majic's, Shin's and Hamilton's royalty accounts. . . ." (Id. at 4, ¶ 6) Likewise," any future [a]dvances payable under [Contract 2]" would be paid out separately and "charged to their respective royalty accounts. (Id. 3, ¶ 5)

Pursuant to Contract 3, Majic, Shin, and Hamilton "fully release[d] and forever discharge[d] Reid and EMI . . . from any legal cause of action whatsoever now or hereafter existing under any law . . . any time prior to January 1, 2014." Shin and Hamilton also "fully release[d] and forever discharge[d] Majic . . . from any legal cause of action relating to the accounting and/or payment of royalties now or hereafter existing under any law . . . any time prior to January 1, 2014." (Id. at 2, ¶ 4) Contract 3 does not contain any release of Majic's claims against Shin, however.

## C.     The Tolling Agreement

After the execution of Contract 3, Majic allegedly discovered that Shin had "acquired in excess of One Hundred and Fifty (150) compositions from 2009 through 2017" through various Joombas entities Shin owned, "and collected . . . over Two Million Dollars ($2,000,000) in royalties from the compositions" during that period. (Cmplt. (Dkt. No. 1) ¶ 18) Shin "never provided the songs/compositions to Majic or Reid or any of the monies associated with the compositions." (Id.) Instead, "Shin assigned the songs to Joombas and engaged in a publishing contract with Universal Music Publishing . . . and others," and "sought to enter into a

8

publishing deal with Warner Chappell Music, Inc., and negotiated a Seven Hundred and Fifty Thousand Dollar ($750,000.00) [deal] for Joombas for the songs that were contractually due to Majic." (Id. ¶¶ 19, 21)  Moreover, the Joombas Defendants "registered copyrights [in] South Korea and the United States without identifying Plaintiff['s] interest in the copyrights."  (Id. ¶ 20)  Shin also co-wrote songs that he never provided to Majic or Reid, "most of [which] reached prominence in Asia."  (Id. ¶ 27)

On April 14, 2017, Shin, Majic, and Reid[8] entered into a tolling agreement (the "Tolling Agreement").  The Tolling Agreement – which identifies Majic, Reid, and EMI collectively as "Publisher" – acknowledges that "Publisher has asserted claims that, beginning in 2011 and through the Effective Date hereof, Shin acquired certain musical compositions and has delivered those compositions to Joombas Co. Ltd. ('Joombas') allegedly in breach of [Shin's obligations under Contract 2, as modified] and failed to deliver those acquired compositions and income derived from such compositions."  The Tolling Agreement further states that Shin denies the breach claim, and contends that Contract 2 is unconscionable, and that he has not received payments due under Contract 2.  (Tolling Agreement (Dkt. No. 1-4))  In the Tolling Agreement, Shin , Majic, Reid, and EMI "agree that commencing as of April 14, 2017 and continuing until 30 days after the date on which either Shin or Publisher provide . . . notice of termination [of the Tolling Agreement], . . . the running of time under any statutes of limitation or any other time-based limitations or defenses . . . that might be asserted as a bar, limitation, or defense to any suit, action or claim arising out or in connection with" the claims the publishers and Shin raised against one another would be tolled.  (Id. at 1-2)

---

[8]  Hamilton is not a party to the Tolling Agreement.

### D.    June 2018 Settlement Agreement

On June 1, 2018 – a little more than a year after the Tolling Agreement was executed – the Reid Defendants, Shin, and Joombas Co., Ltd. entered into a Settlement Agreement (the "2018 Settlement Agreement"). (See Cmplt. (Dkt. No. 1) ¶ 28; 2018 Settlement Agreement (Dkt. No. 69-1))[9] The 2018 Settlement Agreement states that the Reid Defendants "contend that Shin has failed to deliver certain musical compositions to them, in violation of his obligations under [Contract 2 and Contract 3]"; that Shin denies these allegations; but that the Reid Defendants and Shin "desire to settle their dispute amicably. . . ." (2018 Settlement Agreement (Dkt. No. 69-1) at 2)  Under the terms of the Settlement Agreement, Shin agreed to pay a sum of money to the Reid Defendants, and Shin and the Reid Defendants agreed that "[s]olely as between [them], [Contract 2] shall terminate effective as of the date of execution of [the 2018 Settlement Agreement]," and Contract 3 "shall terminate concurrently with the termination of [Contract 2]." (Id. at 3, ¶¶ 3, 4)  The parties to the 2018 Settlement Agreement also agreed to "release, acquit and forever discharge" one another from "any and all causes of

---

[9] Although the June 12, 2018 Settlement Agreement is not attached as an exhibit to the Complaint, the Court may consider it in resolving Defendants' motion to dismiss, because the Settlement Agreement is "integral" to the Complaint. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (a court may consider a document "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

For a document to be integral to a complaint, "plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] document[ ] in framing the complaint.'" DeLuca, 695 F. Supp. 2d at 60 (quoting Chambers, 282 F.3d at 153); see also Williams v. City of New York, No. 14 Civ. 5123 (NRB), 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015) ("A document is not 'integral' simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing his complaint." (emphasis in original)).  Here, Plaintiff's allegations against the Reid Defendants are premised almost entirely on Reid's settlement with Shin, and the effect of that agreement on Plaintiff. (See Cmplt. (Dkt. No. 1) ¶¶ 28-31, 57-58, 63-64, 70-72)  Accordingly, the Complaint "relies heavily upon [the June 2018 Settlement Agreement's] terms and effect, and is thus "integral" to the Complaint.

10

action, claims for relief, lawsuits, charges or complaints" they "ever had or [have] against [the other] with respect to [Contract 2 and Contract 3]." (Id. at 5, ¶ 5)

The 2018 Settlement Agreement repeatedly states that it does not bind or otherwise affect Majic's rights under the various contracts. For example, in the Recitals section of the Settlement Agreement, the parties state that they "specifically exclud[e] from the said settlement any claims that may belong to or be separately capable of being asserted by Majic under the terms of [Contracts 1, 2, and 3]." (Id. at 2) Likewise, in the "Parties Bound" section of the 2018 Settlement Agreement, the parties state that the Settlement Agreement "specifically exclud[es] . . . Majic as to whom this Settlement Agreement is not binding. . . ." (Id. at 3, ¶ 1) And although the 2018 Settlement Agreement terminates Contracts 2 and 3 as between Shin and the Reid Defendants, "[n]otwithstanding anything to the contrary contained in [Contracts 1, 2, and 3] . . . the termination of [Contracts 2 and 3] shall not effect a termination of [Contract 1] insofar as it pertains to the rights of Majic thereunder and Majic shall retain any and all rights and claims under [Contract 1] as if [Contract 2 and Contract 3] had not been terminated." (Id. at 3-4, ¶ 4) Indeed, "[a]s between the Shin Parties and Majic, any rights, claims and defenses that Majic has or may have under [Contracts 1, 2, and 3] . . . shall survive this termination. . . ." (Id.)

## II.    PROCEDURAL HISTORY

The Complaint was filed on September 14, 2018, about three and a half months after Shin, Joombas Co., Ltd., and the Reid Defendants entered into the 2018 Settlement Agreement. (See Cmplt. (Dkt. No. 1)) Majic claims that Shin failed to provide to Majic compositions he had acquired or wrote, and thus had breached Contracts 1, 2, and 3, and violated the Copyright Act. (Id. ¶¶ 35-52; 95-103) The Complaint also asserts fraud and tortious interference with contract claims against the Joombas corporate entities, in connection with the

11

alleged existence of compositions not provided to Majic. (Id. ¶¶ 75-89; 104-112) Majic also seeks an accounting from Shin.[10] (Id. ¶¶ 90-94)

The Complaint further alleges that the Reid Defendants breached Contracts 2 and 3 by "failing to demand that Shin provide . . . compositions to Majic and [the] Reid [Defendants]," and by settling with Shin without including Majic in the settlement. (Id. ¶¶ 53-65) The Complaint also asserts a breach of fiduciary duty claim against the Reid Defendants, contending that they "had a fiduciary duty to Majic to collect monies for compositions . . . and to perform Contract 2," and that the Reid Defendants failed to do so. (Id. ¶¶ 66-74)

On November 26, 2018, Shin and the Joombas Defendants moved to dismiss. (Mot. (Dkt. No. 50)) The Reid Defendants moved to dismiss on February 7, 2019. (Mot. (Dkt. No. 67))

## DISCUSSION

### I.   LEGAL STANDARDS

#### A.   Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen,

---

[10] Plaintiff also seeks a permanent injunction against the Joombas entities and Shin, prohibiting them from "marketing, selling, promoting, distributing, administrating or exploiting[] the acquired compositions." (Cmplt. (Dkt. No. 1) ¶¶ 113-16) "[I]t is well settled that a request for . . . injunctive relief is not an independent cause of action," however. Daytree at Cortland Square, Inc. v. Walsh, 332 F. Supp. 3d 610, 627 (E.D.N.Y. 2018); see also KM Enterprises, Inc. v. McDonald, No. 11-CV-5098 ADS ETB, 2012 WL 4472010, at *20 (E.D.N.Y. Sept. 25, 2012) ("A request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged in the . . . substantive counts." (internal quotation marks and citation omitted), aff'd, 518 F. App'x 12 (2d Cir. 2013)).

12

Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

Allegations that "are no more than conclusions[] are not entitled to the assumption of truth," however. Iqbal, 556 U.S. at 679. A pleading is conclusory "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" id. at 678, offers "'a formulaic recitation of the elements of a cause of action,'" id. (citations omitted), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007). While legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." DiFolco, 622 F.3d at 111 (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

### B.    Rule 9(b) Standard

"Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard for allegations of fraud." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting

13

fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this heightened standard, "'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner, 459 F.3d at 290 (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)). While Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), plaintiff "must [nonetheless] allege facts that give rise to a strong inference of fraudulent intent." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 171 (2d Cir. 2015) (internal quotation marks and citation omitted). "'The requisite "strong inference" of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" Lerner, 459 F.3d at 290-91 (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

## II.    ANALYSIS

### A.    Breach of Contract Claims Against Shin and the Reid Defendants

Plaintiff alleges that Shin failed to provide compositions that he was obligated to provide to Majic, and thus breached Contracts 1, 2, and 3. (Cmplt. (Dkt. No. 1) ¶¶ 35-52) Plaintiff further contends that the Reid Defendants breached Contracts 2 and 3 by entering into a settlement with Shin that did not provide for production of the withheld compositions, or for payments to Majic in connection with withheld compositions. (Id. ¶¶ 53-65)

To plead breach of contract under New York law, a plaintiff must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks and citation

14

omitted). "In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." Wolff v. Rare Medium, Inc., 171 F. Supp. 2d 354, 358-59 (S.D.N.Y. 2001) (dismissing breach of contract claim where plaintiffs had not identified contractual provisions that defendant had breached).

### 1.    **Defendant Shin**

Plaintiff alleges that between 2009 – when Contracts 1 and 2 were executed – and 2017, "Shin acquired in excess of One Hundred and Fifty (150) compositions" through Joombas entities he controlled, "and collected . . . over Two Million Dollars ($2,000,000) in royalties from the compositions." (Cmplt. (Dkt. No. 1) ¶ 18) However, "Shin never provided the songs/compositions to Majic or Reid[,] [n]or [provided] any of the monies associated with the compositions." (Id.) Instead, Shin "assigned the songs to Joombas and engaged in a publishing contract with Universal Music Publishing . . . and others." (Id. ¶ 19) "Shin [also] co-wrote several songs that he never provided to Majic/Reid," most of which "reached prominence in Asia." (Id. ¶ 27) In failing to provide these compositions to Plaintiff, Shin violated Contracts 1, 2, and 3. (Id. ¶¶ 37, 43, 50)

Shin argues that Plaintiff's breach of contract claims fail because "the contracts . . . establish conclusively, and as a matter of law, that [he and] the Joombas Defendants owed no obligations to Majic, only to Reid." (Joombas Br. (Dkt. No. 50) at 6)

### a.    **Contract 1**

Contract 1 requires that Shin – among other things – "[d]eliver to [Majic], for exclusive exploitation, all Compositions," including "all musical compositions . . . written by [Shin] prior to or during the Term [of Contract 1] and . . . any and all other compositions written by [Shin] and/or acquired by [Shin] or [Shin's] Affiliates during the term [of Contract 1]." (Contract 1 (Dkt. No. 1-1) at 1, ¶ 3) The Complaint asserts that Shin breached this provision by

15

not providing all written or acquired compositions to Majic. (See Cmplt. (Dkt. No. 1) ¶¶ 37-39) The Complaint further pleads that Majic was damaged as a result of Shin's breach.

Shin maintains, however, that he was not required to deliver compositions to Majic; instead, "the songs were to be delivered to Reid." (Joombas Br. (Dkt. No. 50) at 11)  In making this argument, Shin cites to (1) an integration clause in Contract 2, which he contends "supersedes Contract 1 with regard to the delivery requirement"; and (2) Contract 3, which amends Contract 2 so as to require Shin "to perform, directly for [Reid], . . . any all obligations which relate to the Compositions [and] Delivery thereof. . . ." (Id. at 11-12 (emphasis removed))

It is true that Contract 3 alters Shin's and Majic's delivery obligations.  Pursuant to Contracts 1 and 2, Shin was required to deliver compositions to Majic, and Majic was required to deliver those compositions to Reid. (Contract 1 (Dkt. No. 1-1) at 1; Contract 2 (Dkt. No. 1-2) at 2, ¶ 3)  After Contract 3 was executed, "[n]otwithstanding that all of the obligations to [Reid] under [Contract 2] are solely Majic's obligations" (Contract 3 (Dkt. No. 1-3) at 2, ¶ 2), Shin was required to perform "any and all obligations" for Reid "relat[ing] to the Compositions, [and] [d]elivery thereof." (Id.)  Accordingly, Contract 3 expressly modifies the delivery obligations set out in Contract 2, and -- because Contract 1 "shall be deemed amended in all respects necessary to conform to the provisions of [Contract 2]" (Contract 1 (Dkt. No. 1-1) at 7, ¶ 13) – Contract 3 also modifies Contract 1's delivery obligations.  After execution of Contract 3, Shin no longer was required to deliver compositions to Majic; his obligation was to deliver the compositions to Reid.  Accordingly, to the extent that Majic's claim for breach of Contract 1 concerns conduct that took place after Contract 3 was executed in January 2014, Shin's motion to dismiss Majic's breach claim will be granted.  The existence of Contract 3 does not, however, negate Majic's claim insofar as it relates to conduct that took place before Contract 3 was executed in January 2014.

As for Shin's argument that Contract 2's integration clause supersedes any delivery obligation he had under Contract 1, that argument is not persuasive. Although Contract 2 contains an integration clause providing that "[a]ll prior and contemporaneous conversations, negotiations, and alleged agreements, representations, covenants and warranties concerning the subject matter of this Agreement are merged herein" (Contract 2 (Dkt. No. 1-2) at 12, ¶ 12(f)) – the subject matter of Contract 1 and Contract 2 are not the same. The subject matter of Contract 1 is the rights and obligations Shin and Majic owe to one another with respect to Shin's compositions, including the allocation of interest in the compositions to Majic, and the allocation of royalty payments and advances from Majic to Shin. The subject matter of Contract 2 is the rights and obligations that Majic and the Reid Defendants owe one another. Because Contract 1 and Contract 2 do not concern the same subject matter, Contract 2's delivery provisions do not supersede Contract 1's delivery provisions. See CreditSights, Inc. v. Ciasullo, No. 05 CV 9345 (DAB), 2007 WL 943352, at *8 (S.D.N.Y. Mar. 29, 2007) ("The Separation and Voting Agreements do not supersede the Restricted Grant Agreement because these agreements do not relate to precisely the same subject matter, and because the merger clause in the separation agreement does not indicate an intent to revoke specifically the Restricted Grant Agreement.").

Accordingly, Majic states a claim for breach of Contract 1 as to conduct that took place before Contract 3 was executed in January 2014. Shin's motion to dismiss will be granted as to conduct that took place after Contract 3 was executed.

### b.      Contracts 2 and 3

Majic contends that Shin "had a duty" under both Contract 2 and Contract 3 to provide compositions to Majic, and that Shin breached both contracts by "fail[ing] to provide the acquired composition[s] to Majic and fail[ing] to submit composition[s] co-written by Shin to Majic." (Cmplt. (Dkt. No. 1) ¶¶ 43, 45, 50-51) As with Majic's Contract 1 breach claim, Shin

17

argues that he "ha[d] no obligations to Majic, only to Reid." (Joombas Br. (Dkt. No. 50) at 7) Shin also contends that "the right of administration" under Contract 2 "resides solely with Reid," such that "[only] Reid, not Majic, has standing to bring a claim against Shin or any Joombas Defendants hereunder." (Joombas Br. (Dkt. No. 50) at 12)

In arguing that, as a result of Reid's "right of administration" under Contract 2, Majic lacks "standing to bring a claim," Shin misconstrues the relevant contractual provision. Paragraph 5(b) of Contract 2 – entitled "Exclusive Administration Rights" – provides that during the term of the agreement,

> Publisher and its Licensees shall have, and you hereby grant, transfer, assign, and license to Publisher . . . the sole and exclusive right and license throughout the Territory . . . to: license the exploitation of the Compositions in all forms, medias, technologies[,] and configurations . . .; print, publish, rent and/or sell printed editions and other reproductions of the Compositions, in any forms, media[,] or configurations . . . ; collect all monies whatsoever derived from exploitation of the Compositions . . . ; license public performance rights; make arrangements, adaptations[,] and other changes; and otherwise administer and grant rights in, and with respect to, the Compositions to the fullest extent possible. In connection with the foregoing, you hereby appoint Publisher your true and lawful attorney-in-fact to: secure and renew copyrights . . . ; subject to your written consent in each instance, initiate and compromise infringement claims; and . . . execute in your and Writer's name any and all documents reasonably necessary or desirable to accomplish the foregoing and/or effectuate Publisher's rights hereunder. . . . You also grant to Publisher exclusive rights . . . to use Writer's name, and approved likenesses and approved biographies . . . in connection with music publishing activities."

(Contract 2 (Dkt. No. 1-2) at 3-4, ¶ 5(b))

The administration rights Majic grants to Reid in Paragraph 5(b) concern the licensing and exploitation of the "Compositions"; this provision does not address a party's rights in the event of a contractual breach. Nothing in Paragraph 5(b) suggests that Majic is granting to Reid – and depriving itself of – the ability to seek redress for breaches of the publishing agreements. Accordingly, Shin's argument that – by virtue of this provision – only Reid has authority to enforce the terms of Contract 2 is not persuasive.

18

Shin also contends that he owes no delivery obligation to Majic under Contract 2. Contract 2 constitutes an agreement between Majic and Reid in which Majic is obligated to "[d]eliver to [Reid] each Composition." (Id. at 2, ¶ 3)  While Shin signed a Writer's Inducement to Contract 2, in which he "agree[d] to be bound by all of the terms, covenants and conditions" set forth in Contract 2 (id. at 15), none of those "terms, covenants, and conditions" obligate Shin to deliver compositions to Majic.  Contract 3 likewise does not impose an obligation on Shin to deliver compositions to Majic.  Indeed, the apparent purpose of Contract 3 is to excise Majic from the composition delivery process.  Accordingly, Shin's motion to dismiss Majic's  claims for breach of Contract 2 and breach of Contract 3 will be granted.[11]

### 2.  The Reid Defendants

Majic claims that the Reid Defendants breached Contracts 2 and 3 by entering into a settlement with Shin.  Majic contends that, by settling with Shin, the Reid Defendants "derived benefits from Shin through Majic while leaving Majic materially damaged," and thereby "breach[ed] . . . applicable covenants of good faith and fair dealing and fiduciary obligations."  Majic further contends that the Reid Defendants did not fulfill their obligation to demand that Shin deliver compositions, "administrate compositions for Majic," and collect funds for Majic.  (Cmplt. (Dkt. No. 1) ¶¶ 56-57, 59-61)  Finally, Majic claims that the Reid Defendants "caused . . . copyright to be registered without identifying Plaintiff."  (Id. ¶ 58)  For the reasons discussed below, these allegations are not sufficient to state a claim for breach of Contract 2 or Contract 3 against the Reid Defendants.

---

[11]  The Complaint does not allege that Shin breached his delivery obligations to Reid under Contracts 2 and 3, and that Majic has a right to enforce that obligation.

New York law "recognizes an implied covenant of good faith and fair dealing in every contract." County of Orange v. Travelers Indem. Co., No. 13-CV-06790 NSR, 2014 WL 1998240, at *2 (S.D.N.Y. May 14, 2014). The implied covenant "'embraces a pledge that neither party shall do anything which shall have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Id. (quoting Atmosphere Scis., LLC v. Schneider Advanced Techs, Inc., No. 12 Civ. 3223 (SAS), 2012 WL 4240759, at *5 (S.D.N.Y. Sept. 19, 2012)).

As an initial matter, the 2018 Settlement Agreement unambiguously reserves Majic's rights against the settling parties. While the Reid Defendants and Shin agree to "release, acquit and forever discharge" one another from "any and all causes of action, claims for relief, lawsuits, charges or complaints" they "ever had or [have] against [the other] with respect to [Contract 2 and Contract 3]" (2018 Settlement Agreement (Dkt. No. 69-1) at 5, ¶ 5), their settlement agreement "specifically exclud[es] from the said settlement any claims that may belong to or be separately capable of being asserted by Majic under the terms of [Contracts 1, 2, and 3]." The 2018 Settlement Agreement also states that it is "not binding" on Majic, and that "[a]s between the Shin Parties and Majic, any rights, claims and defenses that Majic has or may have under [Contracts 1, 2, and 3] . . . shall survive. . . ." (Id. at 2, 3 ¶ 1, 3-4, ¶ 4)

Accordingly, to the extent that Majic's breach of contract claim against the Reid Defendants is premised on the notion that the Reid Defendants violated the implied covenant of good faith and fair dealing by entering into the 2018 Settlement Agreement, the Reid Defendants' reservation of Majic's rights in the 2018 Settlement Agreement dooms that claim. Majic can point to no "right . . . to receive the fruits of the contract" that the Reid Defendants "destroy[ed] or injur[ed]."

While Majic asserts that the Reid Defendants failed to perform several other supposed duties owed under Contracts 2 and 3, most of these allegations are made either without reference to any contractual provision setting out such a duty, or by misconstruing the relevant provisions. Plaintiff alleges, for example, that the Reid Defendants breached Contracts 2 and 3 by failing to "demand that Shin deliver compositions," but nothing in either contract requires Reid to make such a demand. Indeed, Contracts 2 and 3 provide that it is Majic's obligation to ensure the delivery of the compositions. (Contract 2 (Dkt. No. 1-2) at 2, ¶ 3; Contract 3 (Dkt. No. 1-3) at 2, ¶ 2) (Majic[] [and] Shin . . . shall be jointly and severally liable for . . . all obligations relating to the Compositions, [and] Delivery thereof. . . ."))

Majic similarly complains that the Reid Defendants did not "administrate compositions" for Majic. The Complaint does not identify which compositions the Reid Defendants did not "administrate." To the extent Majic is referring to compositions Shin never provided to Majic or Reid, Contract 2 – while granting "exclusive administration rights" to Reid to license and exploit the compositions delivered to Reid (see Contract 2 (Dkt. No. 1-2) at 3-4, ¶ 5(b)) – does not require the Reid Defendants to "administrate compositions" that they never received, and Contract 3 does not discuss administration of the compositions at all. (Contract 3 (Dkt. No. 1-3))

Majic likewise complains that the Reid Defendants failed to "collect funds" for Majic. Again, Majic does not identify the funds the Reid Defendants should have collected. To the extent that Majic is referring to monies that would have been produced from compositions that Shin should have, but never delivered to, the Reid Defendants, the Reid Defendants had no such obligation. While Contract 2 grants the Reid Defendants the right to "collect all monies whatsoever derived from exploitation of the Compositions," Contract 2 does not obligate the

21

Reid Defendants to "collect . . . monies" for compositions that it did not have the opportunity to "exploit[]."[12]

Finally, Majic claims that the Reid Defendants "caused . . . copyright to be registered without identifying Plaintiff." (Cmplt. (Dkt. No. 1) ¶ 58) The Complaint asserts that "Majic's income, ownership and administrative interests in the Shin compositions must be registered with collection societies around the world, which Reid was required to do as administrator." Majic also identifies one copyright – for a composition called "Move Over My Way" – that the Reid Defendants allegedly registered without including Plaintiff on the registration.[13] (Id. ¶¶ 58, 62)

Contract 2 "appoint[s]" Reid as Majic's "attorney-in-fact to . . . secure and renew copyrights," and – "subject to Majic's written consent," to "initiate and compromise copyright infringement claims." Contract 2 (Dkt. No. 1-2) at 3-4, ¶ 5(b)) Majic grants this authority to the Reid "[i]n connection with" Majic's grant to Reid of the "sole and exclusive right and license" to

> license the exploitation of the Compositions . . .; print, publish, rent and/or sell printed editions and other reproductions of the Compositions. . . ; collect all

---

[12] Were this Court to interpret the Complaint as alleging that the Reid Defendants were obligated, in connection with the 2018 Settlement Agreement, to obtain settlement funds for Majic, or to provide a portion of the funds it obtained through the settlement to Majic, Majic would still have no claim. (See Cmplt. (Dkt. No. 1) ¶ 30 ("Upon information and belief, Reid received in excess of One Hundred Thousand Dollars ($100,000.00) associated with the [2018 Settlement Agreement] from Shin and Joombas and never provided any funds to Majic or collected any monies due to Majic.")) The only funds the Reid Defendants were contractually obligated to pay Majic, however, were certain advances and royalties from exploited compositions. The funds the Reid Defendants obtained in the settlement were provided "[i]n partial consideration for the Releases set forth below, and as settlement of the [d]ispute," and "[i]n recognition of [the Reid Defendants'] pecuniary interest in [Contracts 2 and 3], and as a buyout of said interest." (2018 Settlement Agreement (Dkt. No. 69-1) at 3-4, ¶¶ 3, 4.2) The monies the Reid Defendants obtained through the 2018 Settlement Agreement were not advances or royalties that the Reid Defendants owed to Majic.

[13] The Reid Defendants assert that this composition "was never even delivered" to them and that, in any event, the registration for this composition was filed by Seven Peaks Music, an unrelated entity. (Reid Def. Reply Br. (Dkt. No. 70) at 10 & n.4)

22

monies whatsoever derived from exploitation of the Compositions . . . ; license public performance rights; make arrangements, adaptations[,] and other changes; and otherwise administer and grant rights in, and with respect to, the Compositions to the fullest extent possible.

(Id.)

The Reid Defendants contend that this provision does not impose any obligation on the Reid Defendants to register copyrights for any composition. (Reid Def. Br. (Dkt. No. 68) at 22-23) According to the Reid Defendants, this provision "provides [the Reid Defendants] with the right, but not the obligation, to register copyrights for the compositions at issue." (Reid Def. Reply (Dkt. No. 70) at 10 (emphasis removed)) The Court agrees: Majic has not pointed to any language in Contract 2 (or Contract 3) that requires Reid to register copyrights for the compositions Majic or Shin deliver, much less register Majic's interest in the copyrights. Accordingly, the Reid Defendants' alleged failure to register Majic's interest in copyrights cannot support a breach of contract claim.

The Reid Defendants' motion to dismiss Majic's breach of contract claims against them will be granted.

## B.     Breach of Fiduciary Duty Claim Against the Reid Defendants

Majic contends that Reid "had a fiduciary duty to Majic to collect monies for compositions," and that Reid failed to do so. (Cmplt. (Dkt. No. ¶¶ 68-69, 74)

"In order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct." Kurtzman v. Bergstol, 40 A.D.3d 588, 590 (2d Dept. 2007) (citing Ozelkan v. Tyree Bros. Envtl. Servs., 29 A.D.3d 877, 879 (2d Dept. 2006)); see also Kidz Cloz, Inc. v. Officially For Kids, Inc., No. 00 CIV. 6270 (DC), 2002 WL 392291, at *4 (S.D.N.Y. Mar. 13, 2002). "A fiduciary relationship exists under New York law 'when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within

23

the scope of the relation.'" Kidz Cloz, Inc., 2002 WL 392291, at *4 (quoting Flickinger v. Harold C. Brown & Co., 947 F.2d 595, 599 (2d. Cir. 1991)); see also Compania Sud-Americana de Vapores, S.A. v. IBJ Schroder Bank & Tr. Co., 785 F. Supp. 411, 425-26 (S.D.N.Y. 1992) ("[A] fiduciary relationship is one founded on trust or confidence reposed by one person in the integrity and fidelity of another. . . . A fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other." (citation omitted)). "New York law is . . . quite clear . . . that 'a conventional business relationship, without more, does not become a fiduciary relationship by mere allegation.'" Compania Sud-Americana de Vapores, S.A., 785 F. Supp. at 426 (quoting Oursler v. Women's Interart Ctr., Inc., 170 A.D.2d 407, 407 (1st Dept. 1991)).

The Complaint does not plead facts sufficient to demonstrate that Majic had a fiduciary relationship with the Reid Defendants. Indeed, Majic makes no effort in its briefing to demonstrate that such a relationship existed. Accordingly, the Reid Defendants' motion to dismiss Majic's breach of fiduciary duty claim will be granted.

C.     **Tortious Interference with Contract Claim Against the Joombas Entities**

Majic alleges that the Joombas entities are "alter egos of each other" (Cmplt. (Dkt. Nos. 1) ¶¶ 76-77), and that they tortiously interfered with Contracts 1, 2, and 3 by inducing Shin to breach these contracts. (Cmplt. (Dkt. No. 1) ¶¶ 104-112)

"Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" Kirch v. Liberty Media Corp., 449 F.3d 388, 401-02 (2d Cir. 2006) (quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424 (1996)). Moreover, "the

24

third party's breach must have been caused by the defendant, meaning that the breach would not have occurred but for the defendant's acts." Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490, 498 (S.D.N.Y. 2002), aff'd, 65 F. App'x 736 (2d Cir. 2003).

Here, the Complaint does not adequately plead a tortious interference claim against the Joombas Defendants, because Plaintiff has not alleged facts sufficient to show that they procured Shin's breach. "With respect to [this] element[,] . . . 'it is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third party's contract with the plaintiff; instead, the evidence must show that the defendant's objective was to procure such a breach.'" Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC, No. 14-CV-7529 (RJS), 2016 WL 5414979, at *5 (S.D.N.Y. Mar. 18, 2016) (quoting Roche Diagnostics GmbH v. Enzo Biochem, Inc., 992 F. Supp. 2d 213, 221 (S.D.N.Y. 2013) (emphasis in Wellington Shields)). "Put simply, a defendant must specifically intend to interfere with the relevant contract [to be liable for tortious interference]." Roche Diagnostics GmbH, 992 F. Supp. 2d at 221.

Here, Plaintiff contends that "the Joombas entities were at all times aware that Shin was a party to" Contracts 1, 2, and 3, and were "aware that Shin has breached" those contracts. (Cmplt. (Dkt. No. 1) ¶¶ 106-07, 111) Plaintiff also contends that the Joombas entities have "exploited the copyrights and collected funds associated with the . . . compositions that [are] the subject of Contracts 1 and 2," and "ha[ve] not provided the copyrights associated with . . . [the] compositions to Majic, nor . . . the funds or complete statements to Majic associated with the . . . compositions relating to [the 2018 Settlement Agreement]." (Id. ¶¶ 108-09) These allegations, at best, suggest that the Joombas Defendants were aware of Contracts 1, 2, and 3, and knew of Shin's breach. But no facts alleged in the Complaint suggest that it was the objective of the Joombas Defendants to procure Shin's breach of Contracts 1, 2, and 3. See

25

Wellington Shields & Co. LLC , 2016 WL 5414979, at *5.  Accordingly, the Joombas

Defendants' motion to dismiss Plaintiff's tortious interference with contract claim will be

granted.

### D.    Fraud Claim Against Shin and the Joombas Defendants

Plaintiff asserts that Shin and the Joombas defendants hid the existence of

additional compositions from Majic, and that this conduct amounts to fraud.

"To state a claim for fraud under New York law, a plaintiff must allege (1) a

material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3)

which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably

relied; and (5) which caused injury to the plaintiff." Fin. Guar. Ins. Co. v. Putnam Advisory Co.,

LLC, 783 F.3d 395, 402 (2d Cir. 2015).  However, "a fraud claim does not lie where it 'is

premised upon an alleged breach of contractual duties and the supporting allegations do not

concern representations which are collateral or extraneous to the terms of the parties'

agreement.'" Guilbert v. Gardner, 480 F.3d 140, 148 (2d Cir. 2007) (quoting McKernin v.

Fanny Farmer Candy Shops, Inc., 176 A.D. 233 (2d Dept. 1991))  "To maintain a claim of fraud

in such a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to

perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or

extraneous to the contract." Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d

13, 20 (2d Cir. 1996) (citations omitted)).

In support of its fraud claim, Plaintiff alleges that Shin "misrepresented and

omitted the . . . existence of the compositions from Majic with the intent of depriving Majic of

intellectual property and monies," and "hid all the compositions in his [Joombas] entitities . . . in

order to keep Majic in the dark." (Id. ¶¶ 82-85)  According to the Complaint, Shin operated the

Joombas entities from 2009 to 2017, and ". . . was a principal/owner in all the Joombas entities"

26

during that time. (Cmplt. (Dkt. No. 1) ¶¶ 76-77) Plaintiff further alleges that "[t]he Joombas entities are alter egos of each other." (Id. ¶ 78)

These allegations do not demonstrate a "legal duty separate from" Shin's obligations under Contracts 1, 2, and 3, nor do they make out "a fraudulent misrepresentation [that is] collateral or extraneous to" these contracts[14] Indeed, the Complaint links Shin's "contractual duty" to "inform[] Majic of the existence of the . . . compositions" to Shin's alleged "misrepresent[ation] and omi[ssion] [of] the fact of the existence of the compositions from Majic." (Cmplt. (Dkt. No. 1) ¶¶ 82, 85)

The Complaint also does not adequately plead facts that make out the elements of fraud, much less comply with the heightened pleading standards of Fed. R. Civ. P. 9(b). Majic does not, for example, identify misrepresentations made by the Joombas Defendants. And while the Complaint speaks generally of omissions on Shin's part, it does not specify when or where the misleading statements were made. Nor does the Complaint plead reasonable reliance on any such misrepresentations.

Accordingly, Shin and the Joombas Defendants' motion to dismiss Plaintiff's fraud claim will be granted.

---

[14] In its opposition brief, Majic attempts to clarify its fraud claim, arguing that Shin's misrepresentations about the compositions were made "during the negotiation[] of [Contract 3]," and were necessary to secure Plaintiff's agreement to enter into Contract 3; accordingly, they amounted to fraud in the inducement. (Pltf. Opp. Br. (Dkt. No. 52) at 15-16) These allegations are not set forth in the Complaint, however, and a "complaint cannot . . . be amended by the briefs in opposition to a motion to dismiss." In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 432 (S.D.N.Y. 2001); see also Fadem v. Ford Motor Co., 352 F. Supp. 2d 501, 516 (S.D.N.Y.) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." (collecting cases)), aff'd, 157 F. App'x 398 (2d Cir. 2005).

27

**E.      Copyright Act Claim Against Shin**

Plaintiff alleges that "Shin, in violation of his contract, failed to include Majic on all copyright registrations," and did not "provide[] the copyrights associated with all the compositions from 2009-2017 to Majic. . . ." (Cmplt. (Dkt. No. 1) ¶¶ 98-99) As a result, "Majic was deprived of the right to register the copyrights." (Id. ¶ 100)

Although Plaintiff styles this claim as a "violation of the United States Copyright Act" (id. ¶ 103), the Complaint does not identify what provision or provisions of the Copyright Act Shin allegedly violated. Plaintiff also does not explain how the Copyright Act addresses the conduct about which Plaintiff complains, whether characterized as "depriv[ing] [someone] of the right to register copyrights"; failing to "include [someone] on . . . copyright registrations"; or failing to "provide[] . . .copyrights" to someone. Accordingly, Shin's motion to dismiss Plaintiff's "Copyright Act" claim will be granted.

**F.      Request for an Accounting From Shin**

Plaintiff alleges that "Shin has collected monies from the sale of music created under Contract 1 and Contract 2 and has failed to account to Majic for the monies he collected." Plaintiff goes on to assert that "Shin must account to Majic for all earnings associated with the musical composition[s] that are the subject of Contract 2 and Contract 3." (Cmplt. (Dkt. No. 1) ¶¶ 92-93)

"To state a claim for an accounting under New York law, a plaintiff must establish: (1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." Rosa v. TCC Commc'ns, Inc., No. 15CV1665, 2016 WL 67729, at *7 (S.D.N.Y. Jan. 5, 2016).

28

Here, the Complaint does not assert – much less plead facts suggesting – that Plaintiff and Shin had "relations of a mutual and confidential nature." Instead, the Complaint merely alleges that Plaintiff and Shin were signatories to various publishing agreements. The parties to "a typical, arms-length business relationship" generally do not have the "confidential" relationship necessary to satisfy the first element of an accounting claim, however. See Stadt v. Fox News Network LLC, 719 F. Supp. 2d 312, 319 (S.D.N.Y. 2010) (owner of video footage licensed to Fox News sued Fox News for violating license agreement; claim for an accounting dismissed because "the Complaint does not allege adequate facts to suggest that the parties were in a relationship of sufficient trust to create . . . a confidential relationship" ); Gate Techs., LLC v. Delphix Capital Markets, LLC, No. 12 CIV. 7075 JPO, 2013 WL 3455484, at *8 (S.D.N.Y. July 9, 2013) ("[Even] a confidential relationship born out of a standard contractual provision will nevertheless fail to give rise to [t]he required fiduciary relationship."); Almazan v. Almazan, No. 14-CV-311 AJN, 2015 WL 500176, at *13 (S.D.N.Y. Feb. 4, 2015) ("Simply stated, a party may not maintain an action for an accounting . . . if the parties enjoyed merely a contractual, as opposed to fiduciary, relationship." (internal quotation marks and citation omitted)).

Accordingly, Shin's motion to dismiss Plaintiff's claim for an accounting will be granted.[15]

---

[15] Even if Plaintiff had pled facts demonstrating the requisite confidential relationship, its accounting claim likely would fail, "as 'Plaintiff[] ha[s] sought money damages in [its] breach of contract claim.'" "'[B]ecause discovery as to the measure of damages would be available to [it] if [Plaintiff] were to prevail on that claim, [Plaintiff] can obtain all the information [it] seek[s] in [its] existing claim at law.'" Gate Techs., LLC, 2013 WL 3455484, at *8 (quoting Banks v. Correctional Servs. Corp., 475 F. Supp. 2d 189, 202 (E.D.N.Y. 2007)).

29

## CONCLUSION

Defendant Shin's motion to dismiss is granted in part and denied in part as set forth above. The Joombas Defendants' motion to dismiss is granted in its entirety, and the Reid Defendants' motion to dismiss is granted in its entirety. The Clerk of Court is directed to terminate the motions (Dkt. Nos. 50, 67).

Dated: New York, New York
      September 23, 2019

SO ORDERED.

Paul G. Gardephe
United States District Judge

30